**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

Joshua Peneycad,            :
                      :
     Plaintiff,       :
                      :
     v.               : CASE NO. 3:23-cv-1035(JAM)
                      :
RTX Corporation et al.,   :
                      :
     Defendants.      :
                      :

## RULING ON COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

In response to duly published notices of the pending private securities class actions, Plaintiff William Chow, and a group of plaintiffs made up of the New England Teamsters Pension Fund, Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund, and United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 WBPA Fund ("the Northeast Pension Funds" or "the group") have filed motions to be appointed lead plaintiff and to appoint lead counsel.  (Dkts. #10, 15).[1]  These motions were referred to the undersigned by the Honorable Jeffrey A. Meyer.  (Dkt. #45).  Oral argument on the competing motions was held on April 11, 2024.  (Dkt. #57).  For

---

[1] Plaintiff Michael C. Jones also made a timely motion for appointment as lead plaintiff and approval of his choice of lead counsel (dkt. #14) but has since withdrawn these motions (dkt. #20).

the following reasons, movant William Chow's motion for
appointment as lead plaintiff and for class counsel is DENIED,
and the Northeast Pension Funds' motion for appointment as lead
plaintiff and for appointment of class counsel is GRANTED.

## I.   Background and Procedural History

The actions Peneycad v. RTX Corp. et al, 3:23-cv-1035 (JAM)
and New England Teamsters Pension Fund v. RTX Corp. et al, 3:23-
cv-1274 (JAM) have been consolidated before the Court.  (Dkt.
#43).[2]  Plaintiffs in both cases allege that the RTX Corporation
and certain individual executive officers violated Sections
10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and
78t(a), and the U.S. Securities and Exchange Commission ("SEC")
Rule 10b-5 promulgated thereunder.  (Dkt. #11 at 5).  RTX is an
"aerospace and defense company that provides systems and
services for commercial, military, and government customers."
(Dkt. #16 at 7).  The violations alleged in the class complaint
arose from the discovery that several Pratt & Whitney PW1000G
Geared Turbofan airplane engines ("GRF engines") were produced

---

[2] The first action titled Peneycad v. RTX Corp., et al, 23-cv-1035 (JAM) was
filed on August 3, 2023, and the second action titled New England Teamsters
Pension Fund v. RTX Corp. et al, 23-cv-1274 (JAM) was filed on September 28,
2023.  The first action was brought on behalf of investors who purchased or
otherwise acquired RTX securities between February 8, 2021 and July 25, 2023.
The second action was brought on behalf of investors who purchased or
otherwise acquired RTX securities between February 8, 2021 and September 8,
2023, thus expanding the class period.  The actions have been consolidated on
the Peneycad v. RTX Corp., et al, 23-cv-1035 (JAM) docket.  Thus, all docket
citations are to the lead case docket 23-cv-1035 (JAM) unless otherwise
indicated.

with metal containing microscopic contaminants.  (Dkt. #11 at 8-9).  On July 25, 2023, Pratt & Whitney disclosed this situation and announced it would need to remove the engines at issue and inspect them for microscopic cracks.  Id.  The RTX share price declined upon this disclosure.  (Dkt. #16 at 9).  In September 2023, RTX further disclosed that the company would lose an estimated $3.5 billion in profits due to the issues, which caused the share price to decline further.  Id.  Accordingly, the class complaint is brought on behalf of all investors who purchased or otherwise acquired RTX securities between February 8, 2021, when RTX stated in its 2020 Annual Report on Form 10-K that it was producing and delivering the GRF engines, and September 8, 2023, the last day of trading before the full extent of projected losses due to the GRF engine quality control issues was disclosed.[3]  (Dkt. #11 at 5, 8; dkt. #41 at 14 n.11).

## II.  Legal Standard

According to the Private Securities Litigation Reform Act ("PSLRA"), the Court is required to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).

---

[3] Both Mr. Chow and the group adopt the longest possible class period of February 8, 2021 to September 8, 2023.  (Dkt. #11 at 5 n.2; dkt. #16 at 5 n.1).

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) "has either filed the complaint or made a motion in response to a notice," (2) "in the determination of the court, has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

At the lead plaintiff appointment stage of a PSLRA action, the "proposed lead plaintiff must only meet its prima facie burden of establishing its adequacy and typicality." Galmi v. Teva Pharms. Indus. Ltd., 302 F. Supp. 3d 485, 505 (D. Conn. 2017) (citing Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008)). For typicality, the *prima facie* showing is satisfied if the proposed lead plaintiff's claims "arise[] from the same course of events," and the proposed lead plaintiff will "make[] similar legal arguments to prove the defendant's liability." Janbay v. Canadian Solar, Inc., 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (internal citations omitted). For adequacy, the prima facie showing is satisfied if "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure

4

vigorous advocacy." Teva, 302 F. Supp. 3d at 505 (quoting Khunt v. Alibaba Grp. Holding Ltd., 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015)).

The presumption of the most adequate plaintiff may only be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

**III. Discussion**

   *A. Summary of pending motions.*

In their original motions for appointment as lead plaintiff and for appointment of lead counsel, both Mr. Chow and the group claim to be the most adequate plaintiff because they timely filed their motions, have the largest financial interest in the relief sought by the class, and satisfy the requirements of FRCP 23. (Dkts. #10, 15).

Following the original motions, Mr. Chow conceded that the Northeast Pension Funds assert a greater financial interest in the litigation. (Dkt. #34 at 5). However, Mr. Chow argues that the group does not satisfy Rule 23 because it was "cobbled together by counsel," has no prior relationship, and lacks the ability to function cohesively and effectively manage the

litigation apart from their attorneys.  (Dkt. #34 at 6).  Mr.
Chow contends that for these reasons, the group is not the
presumptive lead plaintiff.  Id. at 7.  Mr. Chow also makes
arguments that individual members of the group are inadequate.
Specifically, Mr. Chow argues that the New England Teamsters'
representative, Mr. Greene, has a history of failing to
supervise lawyers in his capacity as Chairperson and member of
the Board of Trustees of the Boston Retirement System.  Id. at
6-7.  Regarding Laborers Local 60, Mr. Chow argues that Laborers
Local 60 purchased a disproportionate number of shares after the
alleged fraud began to be revealed, and thus would be subject to
a unique defense.  Id. at 7.

The Northeast Pension Funds group argues that to be
entitled to the presumption of lead plaintiff, it need only show
that it has the largest financial interest in the litigation and
make a *prima facie* showing of adequacy and typicality under Rule
23.  (Dkt. #41 at 7).  In response to Mr. Chow's objections to
individual members of the group, the group asserts that Mr.
Greene did not oversee counsel in the previous litigation, and
that this "poor fiduciary" argument has been previously rejected
by courts in appointing Boston Retirement System as lead
plaintiff.  Id. at 12.  Lastly, the group argues that plaintiffs
who have purchased shares before and after partial disclosures
have not been disqualified from serving as the lead plaintiff on

this basis.  Id. at 14.  For the foregoing reasons, the group

argues that it is entitled to the presumption of most adequate

plaintiff, which Mr. Chow has failed to rebut.

> B. The Court will evaluate the propriety of the Northeast
> Pension Funds' grouping before determining which
> movant is the presumptively most adequate plaintiff.

Mr. Chow has two categories of objections to the

appointment of the Northeast Pension Funds as lead plaintiff.

First, Mr. Chow argues that the grouping of the Northeast

Pension Funds itself is problematic.  (Dkt. #34 at 6).  Second,

Mr. Chow raises individual objections against two of the group's

three members.  Id. at 6-7.  Mr. Chow argues that the court

should consider all his objections in the first step of the lead

plaintiff appointment process, when the court evaluates which

lead plaintiff movant is the presumptively "most adequate

plaintiff."  (Dkt. #42 at 5) (arguing that "the Group fails to

demonstrate that it is adequate, and therefore the presumption

does not apply to the Group").  According to this logic, Mr.

Chow's objections disqualify the Northeast Pension Funds from

consideration as a potential lead plaintiff, so the presumption

of most adequate plaintiff does not attach to the Northeast

Pension Funds, and instead should be applied to Mr. Chow.  The

group disagrees, arguing that all of Mr. Chow's objections

should be considered as attempts to rebut the presumption of

most adequate plaintiff to which the group is entitled.  (Dkt. #41 at 7).  To evaluate the parties' motions, the Court must first determine the order in which it will evaluate Mr. Chow's objections, both to the grouping of the Northeast Pension Funds and to the individual members of the group.

Courts have reached different conclusions regarding the proper order in which to analyze objections made to a lead plaintiff group.  Courts often evaluate a proposed grouping by applying the "Varghese factors," which were articulated by the court in Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388 (S.D.N.Y. 2008).  Courts within the Second Circuit Court of Appeals have generally considered those factors *before* determining which lead plaintiff movant is the presumptively most adequate plaintiff.  When adopting that approach, some courts evaluate the propriety of the group as a threshold issue, which the group must pass before it can be considered for selection as lead plaintiff.  Brady v. Top Ships Inc., 324 F. Supp. 3d 335, 345 (E.D.N.Y. 2018) (describing aggregation of a lead plaintiff group as a "threshold issue").  Other courts evaluate the grouping while determining which plaintiff is the presumptively most adequate according to the requirements of the PSLRA.  *See* San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc., 2023 WL 3750115, at *7 n.6 (S.D.N.Y. June 1, 2023) ("[T]his Court finds more persuasive the

approach...where the court construe[s] the Varghese factors not
as imposing a required evidentiary showing but rather as factors
which may be used to examine a group's *prima facie* showing of
adequacy under Rule 23.") (internal citations and quotation
marks omitted).  Alternatively, other courts consider objections
to a grouping as attempts to rebut the presumption of most
adequate plaintiff.  *See* Arkansas Tchr. Ret. Sys. v. Insulet
Corp., 177 F. Supp. 3d 618, 623 (D. Mass. 2016).  While other
courts take different approaches to this issue, courts within
the Second Circuit tend to evaluate objections to a grouping as
a threshold issue, before determining which lead plaintiff
movant is the presumptively most adequate plaintiff according to
the requirements of the PSLRA.  *See* In re Host Am. Corp. Sec.
Litig., 236 F.R.D. 102, 106 (D. Conn. 2006) (determining that
the two groups moving for lead plaintiff status were appropriate
before determining which of the two was entitled to the
presumption of lead plaintiff); Teva, 302 F. Supp. 3d at 493
(evaluating whether to permit a group to aggregate its financial
interests *before* determining which lead plaintiff movant had the
largest financial interest in the litigation); Brady, 324 F.
Supp. 3d at 345; Cullinan v. Cemtrex, Inc., 287 F. Supp. 3d 277,
285 (E.D.N.Y. 2018) ("Before turning to the method of assessing
financial interest, the Court addresses the issue of whether
[the group] should be permitted to aggregate individual members'

losses for purposes of appointment as lead plaintiff."). Therefore, the Court will consider Mr. Chow's objections to the grouping of the Northeast Pension Funds as a threshold issue, to be determined before applying the lead plaintiff presumption.

Mr. Chow argues that his objections to individual members of the group should also be considered as threshold issues which disqualify the Northeast Pension Funds from consideration as potential lead plaintiff. However, Mr. Chow's individual arguments are generally considered at later stages of the lead plaintiff inquiry. First, Mr. Chow argues that the New England Teamsters' representative, Mr. Greene, is inadequate because he allegedly has a history of failing to supervise lawyers in PSLRA litigation. (Dkt. #34 at 6). This type of "poor fiduciary" argument is more often considered either while determining if the lead plaintiff movant satisfies the *prima facie* showing of adequacy, or as an attempt to rebut the presumption of the most adequate plaintiff. *See* Shapiro v. TG Therapeutics, Inc., No. 22-CV-6106 (JSR), 2022 WL 16555585, at *5 (S.D.N.Y. Oct. 31, 2022) (considering poor fiduciary argument when evaluating the *prima facie* showing of adequacy, but before determining whether the presumption of most adequate plaintiff was rebutted). *See also* In re Surebeam Corp. Sec. Litig., No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (considering

poor fiduciary argument as rebuttal to the most adequate plaintiff presumption).

Mr. Chow's next individual argument is that Laborer's Local 60 is subject to a unique defense because it purchased a "disproportionate number of shares after the July 25, 2023 revelations," which exposes it to the defense that Laborer's Local 60 did not rely on the alleged misrepresentations of the defendants or on the integrity of the market price in making its purchases.  (Dkt. #34 at 19).  Regarding Laborer's Local 60, Mr. Chow contends that "[t]he Court must examine the Group's adequacy, individually and collectively, before applying the presumption under the PSLRA as the 'most adequate plaintiff.'" (Dkt. #42 at 9).  However, the argument that a purported lead plaintiff may be subject to unique defenses is "considered more appropriately as rebutting [the movant's] status as presumptive lead plaintiff, not in the context of [the] preliminary assessment of the Rule 23 factors."  In re Hebron Tech. Co., Ltd. Sec. Litig., No. 20 CIV. 4420 (PAE), 2020 WL 5548856, at *6 (S.D.N.Y. Sept. 16, 2020) (quoting Batter v. Hecla Mining Co., No. 19-CV-05719 (ALC), 2020 WL 1444934, *4 (S.D.N.Y. Mar. 25, 2020)) (internal quotation marks omitted).

Accordingly, the Court will first consider Mr. Chow's objections to the Northeast Pension Funds grouping as a

threshold issue.  The analysis will then consider Mr. Chow's
objections to Mr. Greene as an argument that the group fails to
establish a *prima facie* showing of adequacy. Finally, the
analysis will consider the objections to the timing of Laborer's
Local 60's trades as attempts to rebut the presumption that the
Northeast Pension Funds group is the most adequate plaintiff.

 *C. The Northeast Pension Funds may proceed as a group.*

 The Northeast Pension Funds asserts that it has the largest
financial interest in the litigation and satisfies the
requirements of Rule 23 of the Federal Rules of Civil Procedure.
(Dkt. #33 at 5-6).  Therefore, the group argues that it is
entitled to the lead plaintiff presumption.  Id.  Similarly, Mr.
Chow argues that after disqualifying two of the Northeast
Pension Funds' three members, he "has a larger financial
interest than the only remaining movant from the Group, Roofers
Local 8," satisfies FRCP 23, and therefore he should be
appointed lead plaintiff.  (Dkt. #34 at 20).  However, before
"determining which of the potential lead plaintiffs has the
largest financial interest in the litigation...a court must
decide whether it will permit a group of persons or entities to
aggregate their financial interests."  Teva, 302 F. Supp. 3d at
493.  When a putative lead plaintiff group has "limited or no
prior relationship...courts look skeptically at whether the

grouping operates to circumvent the purposes of the PSLRA."  Id.
Alternatively, where a grouping of unrelated investors would
"best serve the class," courts may approve the grouping and
allow its members to aggregate their financial interests for
purposes of the lead plaintiff inquiry.  Int'l Union of
Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.,
2015 WL 7018024, at *2 (S.D.N.Y. Nov. 12, 2015).

In determining whether a group would best serve the class,
a court will look at the group's ability to "function cohesively
and to effectively manage the litigation apart from their
lawyers[.]" Varghese, 589 F.Supp.2d at 392.  To make this
evaluation, courts consider factors such as: "(1) the existence
of a pre-litigation relationship between group members; (2)
involvement of the group members in the litigation thus far; (3)
plans for cooperation; (4) the sophistication of its members;
and (5) whether the members chose outside counsel, and not vice
versa." Id.

### i. *The concerns expressed by courts in allowing groups to aggregate their financial losses are not present here.*

Mr. Chow relies heavily on the court's decision in Galmi v.
Teva Pharmaceuticals Industries Limited to argue that the
grouping of the Northeast Pension Funds is improper.  302 F.
Supp. 3d 485 (D. Conn. 2017).  In Teva, the Honorable Stefan R.

13

Underhill applied the Varghese factors to determine that a group of investors was not the presumptive lead plaintiff after finding that the group could not aggregate its financial interests.  Without aggregation, the group did not have the largest financial interest in the litigation.

In the instant case, there is some evidence to show that the Northeast Pension Funds need not make a showing under the Varghese factors to proceed as a group, because there is no evidence that they were "cobbled together" to manufacture the largest financial interest in the litigation.  Even assuming that application of the factors is appropriate, the application of the factors weighs in favor of allowing the Northeast Pension Funds to proceed as a group.  In Teva, prior to applying the Varghese factors, Judge Underhill noted that increased scrutiny is warranted where the court has reason to believe that a "grouping operates to circumvent the purposes of the PSLRA." Teva at 493.  Judge Underhill highlighted that the PSLRA was enacted to "transfer primary control of private securities litigation from lawyers to investors."  Id. at 495 (quoting In re Petrobras Sec. Litig, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015)) (internal citations omitted).  Judge Underhill noted that where there is no pre-litigation relationship between group members, that fact will "be looked upon unfavorably as evidence that the group was 'cobbled together' by counsel for the sole

14

purpose of securing status as lead plaintiff/appointed class
counsel." Id.  Indeed, as Judge Underhill noted, that concern
"is particularly apparent when aggregating the financial
interests of unrelated investors 'would displace the
institutional investor preferred by the PSLRA.'" Id.  (quoting
In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y.
2005)).  There were two primary issues in Teva that gave rise to
the concern that the litigation would be lawyer driven.

First, Judge Underhill was concerned that the parties were
grouped to manufacture the largest financial interest in the
litigation and position themselves as lead plaintiff.  If they
were not allowed to aggregate their financial interests, none of
the members of the purported group in Teva would have had the
largest financial interest.  Similarly, other courts have
expressed concern about a group attempting to "steal the
presumption as lead plaintiff from either a single entity or one
that was formed for reasons unrelated to its desire to serve as
lead plaintiff."[4]  Teva, 302 F. Supp. 3d at 496 n.4.  In In re
eSpeed, Inc. Sec. Litig., 232 F.R.D. 95 (S.D.N.Y. 2005), the
Honorable Shira A. Scheindlin expressed similar concerns.  In

---

[4] As counsel for the Northeast Pension Funds noted during the oral argument,
Judge Underhill also expressed concern that the two firms that were being
proposed as lead counsel had entered into an agreement that spanned multiple
cases.  Judge Underhill was concerned that the aggregation of the purported
lead plaintiff group was formed because of that agreement, rather than by the
initiative of the parties. Teva, 302 F. Supp. 3d at 495-96.  Similar concerns
are not present in the instant case.

eSpeed, Judge Scheindlin's decision whether to allow the group
at issue "hinge[d] on" whether one of the members of the group
was "dependent on [the other's] losses to establish aggregate
losses greater than" the other movant seeking lead plaintiff
status.  Id. at 100.  If the group member did not have the
largest financial interest standing alone, Judge Scheindlin
determined that aggregation would be inappropriate.  Judge
Scheindlin found that the one group member standing alone had
greater losses than the other movant seeking lead plaintiff
status, "with or without" its additional group member.  Id. at
102.  "Consequently, [the additional group member] may be
included in [the group] as his exclusion has no material affect
[sic] on the lead plaintiff determination."  Id.

Here, there is no incentive to cobble the group together to
gain lead plaintiff status.  Either the New England Teamsters or
Laborers Local 60 could have moved to be appointed as lead
plaintiff individually and claimed a larger financial interest
than Mr. Chow.  These two entities have more claimed loss, net
funds expended, and net shares purchased than Mr. Chow.  (Dkt.
#33 at 10).  The only metric by which Mr. Chow has a larger
interest is in total shares purchased, which has been described
by courts as the "least important" factor.  Cortina v. Anavex
Life Scis. Corp., No. 15-CV-10162, 2016 WL 1337305, at *1
(S.D.N.Y. Apr. 5, 2016).  Courts often find that where

aggregation is not necessary to establish the greatest financial
interest, aggregation is more likely to be appropriate.  *See* May
v. Barclays PLC, No. 23-cv-2583 (LJL), 2023 WL 5950689, at *9
(S.D.N.Y. Sept. 13, 2023) ("[C]ourts have permitted aggregation
where, for example, the evidence does not suggest a manipulative
purpose."); *see also* In re Sequans, 289 F. Supp. 3d 416, 425
(E.D.N.Y. Feb. 6, 2018) (aggregation appropriate where, even
without aggregation, one member of the group would have the
largest financial interest); Barnet v. Elan Corp., 236 F.R.D.
158, 162-63 (S.D.N.Y. 2005) (aggregation appropriate where, even
without aggregation, two individual members would be able to
claim the largest financial interest).  Allowing the Northeast
Pension Funds to proceed as a group will not displace an
investor with larger claimed losses than the individual members
of the group.  Therefore, the Court's skepticism is likely not
warranted.

     In Teva, Judge Underhill was also concerned that the
cobbling together of individual plaintiffs would displace the
institutional investor favored by the PSLRA.  Judge Underhill
declined to aggregate the losses of a purported group of
institutional investors, but did so in favor of an
"institutional investor with experience leading class
litigation" rather than an individual investor.  Teva, 302 F.
Supp. 3d at 506.  In fact, "many courts have demonstrated a

clear preference for institutional investors to be appointed as lead plaintiffs." In re Gentiva Sec. Litig., 281 F.R.D. 108, 113 (E.D.N.Y. 2012). This has even led courts to appoint an institutional investor with a slightly smaller financial interest than another lead plaintiff movant who was an individual investor. Id. For example, in Juliar v. SunOpta Inc., No. 08 CV 933 et al., 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009), the Honorable Paul A. Crotty found that the slight difference in loss did not "overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs." Id.

In the instant case, not only do individual members of the Northeast Pension Funds claim a larger financial interest than Mr. Chow, but the group is also composed of institutional investors preferred by the PSLRA.[5] Even if the aggregation of the group's interests was required to make up the largest financial interest, that aggregation would not displace any institutional investor who might otherwise be entitled to the lead plaintiff presumption.

---

[5] During the oral argument, the parties discussed Mr. Chow's ability to oversee the litigation and supervise counsel as lead plaintiff, considering his status as an individual investor. During that discussion, counsel for the Northeast Pension Funds clarified that the Northeast Pension Funds do not argue that Mr. Chow is an inadequate plaintiff. This section of the ruling makes no determination regarding Mr. Chow's adequacy as a lead plaintiff. Instead, the Court simply notes that allowing the Northeast Pension Funds to continue as a group will not displace an institutional investor who, standing alone, would have a larger financial interest than the members of the group.

As there is no evidence to suggest that the Northeast
Pension Funds were cobbled together by counsel to manufacture
the largest financial interest, and the appointment of the Funds
would align with the Congressional preference for institutional
investors as lead plaintiff, application of the <u>Varghese</u> factors
is not necessary for the Court to determine that appointing the
Northeast Pension Funds as lead plaintiff is in the best
interest of the class.

> ii. *Assuming arguendo that application of the*
> *Varghese factors is appropriate, the Northeast*
> *Pension Funds group satisfies those factors.*

The Court has concluded that the Northeast Pension Funds'
grouping does not warrant skepticism because the grouping is
made up of institutional investors who need not aggregate their
losses to manufacture the largest financial interest.  Even so,
application of the <u>Varghese</u> factors weighs in favor of allowing
the Northeast Pension Funds to proceed as a group.

When evaluating a potential group of plaintiffs under the
<u>Varghese</u> factors, a court will look at the group's ability to
"function cohesively and to effectively manage the litigation
apart from their lawyers."  <u>Varghese</u>, 589 F. Supp. 2d at 392.
Courts consider: "(1) the existence of a pre-litigation
relationship between group members; (2) involvement of the group
members in the litigation thus far; (3) plans for cooperation;

(4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." Id.  These factors are not binding on the court, but can be helpful in determining whether a purported group will be "able to manage the litigation and effectively represent the other putative class members." Cushman v. Fortress Biotech, Inc., No. 20-CV-5767(KAM)(RLM), 2021 WL 1526172, at *2 (E.D.N.Y. Apr. 19, 2021).[6]

First, the group does not contend that its members have a pre-litigation relationship.  Instead, the group argues that pre-litigation relationships "have ***never*** been required for joint lead plaintiff appointment under prevailing PSLRA jurisprudence." (Dkt. #41 at 8) (emphasis in original).  The Northeast Pension Funds group correctly asserts that the lack of a pre-litigation relationship "is not fatal to a group's attempt

---

[6] Courts have also considered other evidence presented by groups as demonstrating cohesion, including: "'[E]vidence regarding why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff.'" Cullinan v. Cemtrex, Inc., 287 F. Supp. 3d 277, 286 (E.D.N.Y. 2018) (quoting Peters v. Jinkosolar Holding Co., No. 11 CIV. 7133 JPO, 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012)).  These factors are largely addressed in the Court's analysis of the Varghese factors, apart from how the members chose to work as a group.  Such evidence is helpful in determining whether a group will be able to "function cohesively." Id.  However, failure to include this factor is not fatal to a motion to be appointed as lead plaintiff. See Cullinan, 287 F. Supp. 3d at 286 (finding that the movant group had sufficiently "demonstrated its group members' plans for cooperation and involvement" without consideration of how the group members chose to work together).  As discussed later in this ruling, the Northeast Pension Funds group has submitted a joint declaration which demonstrates to the Court that the group will be able to cohesively work together to effectively prosecute this litigation in the best interests of the class.

to be appointed lead plaintiff." <u>Teva</u>, 302 F. Supp. 3d at 495.
Instead, it is viewed unfavorably as evidence that the group was
cobbled together for "securing status as lead plaintiff /
appointed class counsel."[7]  <u>Id.</u>  However, the lack of a pre-
litigation relationship will not be weighed heavily against the
group where "it is...apparent that the group was not formed in
order to manufacture a high enough financial interest to beat
out any other competing lead plaintiffs." <u>Peters v. Jinkosolar</u>
<u>Holding Co.</u>, No. 11 CIV 7133 JPO, 2012 WL 946875, at *8
(S.D.N.Y. Mar. 19, 2012).  In this respect, the appointment of
lead plaintiff "on the basis of financial interest, rather than
on a 'first come, first serve' basis, was intended to ensure
that institutional plaintiffs with expertise in the securities
market and real financial interests in the integrity of the
market would control the litigation, not lawyers." <u>Freudenberg</u>
<u>v. E*Trade Fin. Corp.</u>, No. CIV A 07 CIV. 10400, 2008 WL 2876373,
at *4 (S.D.N.Y. July 16, 2008) (quoting <u>In re Donnkenny Inc.</u>
<u>Sec. Litig.</u>, 171 F.R.D. 156, 158 (S.D.N.Y. 1997)).  Accordingly,
a court must reject a group where it is "simply an artifice
cobbled together by cooperating counsel for the obvious purpose

---

[7] In making this statement in <u>Teva</u>, Judge Underhill specified that "such a
concern is particularly apparent when aggregating the financial interests of
unrelated investors 'would displace the institutional investor preferred by
the PSLRA.'"  <u>Teva</u>, 302 F. Supp. 3d at 495 (quoting <u>In re eSpeed, Inc. SEC</u>
<u>Litig.</u>, 232 F.R.D. 95, 100 (S.D.N.Y. 2005)).  As noted in this decision, that
is not the situation in the instant case.

of creating a large enough grouping of investors to qualify as 'lead plaintiff...'"  Id.  As discussed above, the members of the Northeast Pension Funds need not be grouped together to manufacture the largest financial interest.  Therefore, the lack of a pre-litigation relationship does not weigh heavily against the grouping.

Next, the Court will consider the group's involvement in the litigation thus far.  In analyzing this factor, courts have been in favor of grouping where the group members held a single conference call or a meeting discussing the background of the litigation, their investments, the process for serving as lead plaintiff, and the reasons for seeking joint appointment.  San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc., No. 22 CIV. 6339 (JPC), 2023 WL 3750115, at *8 (S.D.N.Y. June 1, 2023).  See also Cushman, 2021 WL 1526172 at *3 (finding that the members of a group "having discussions with their counsel and a conversation with each other is sufficient involvement at this point in order to be able to adequately represent the putative class").  However, in other cases, similar recitations of conference calls or meetings were considered "boilerplate" and not sufficient to weigh in favor of the grouping.  Chauhan v. Intercept Pharms., No. 21-CV-00036 (LJL), 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021).

The Northeast Pension Funds' Joint Declaration contains a relatively boilerplate recitation of a conference call joined by each member's representatives.  On this call, the group's representatives discussed the facts and merits of the case, the losses arising from the alleged misconduct, the lead plaintiff process, the benefits of working together, and strategy for jointly prosecuting the case.  (Dkt. #17-3 at 7).  However, this conference call is not the only evidence of the group's participation in the litigation thus far.  While arguing that it has made a *prima facie* showing of typicality and adequacy, the Northeast Pension Funds group highlights the New England Teamsters' filing of the second complaint in this action that expanded the class period to include a significant corrective disclosure on September 11, 2023.  (Dkt. #33 at 6-7).  In the declaration, the group states that after the filing of the first complaint, the New England Teamsters instructed its counsel to investigate the claims.  (Dkt. #17-3 at 6).  After this investigation, the New England Teamsters instructed counsel to file the second amended complaint expanding the class period. Id.  Thus, while the conference call described in the Joint Declaration is arguably boilerplate, the New England Teamsters' investigation and filing of the second complaint constitutes sufficient involvement in the litigation such that the second factor weighs in favor of the grouping.

The next factor considers plans for cooperation by the group members. Courts consider "concrete commitments and plans for cooperation" to be "positive indications that a group will act cohesively." White Pine Invs. v. CVR Ref., LP, No. 20 CIV. 2863 (AT), 2021 WL 38155, at *2 (S.D.N.Y. Jan. 5, 2021). Where plans are "vague and conclusory," courts have found this factor weighs against a grouping. Jakobsen v. Aphria, Inc., No. 18 CIV. 11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019). In Chahal v. Credit Suisse Grp. AG, No. 18-CV-02268 (AT)(SN), 2018 WL 3093965, *6 (S.D.N.Y. June 21, 2018), objections overruled, No. 18CIV2268ATSN, 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018), the court held that this factor was satisfied where the parties agreed on a dispute resolution mechanism, shared information, and exchanged contact details so that they could work together in absence of counsel and on an emergency basis. In the instant case, the group states that (1) disputes will be decided by a simple majority vote, (dkt. #17-3 at 8); (2) representatives of each member of the group have exchanged direct contact information so that they can communicate with or without counsel on short notice, (id. at 7); and (3) they attest that they will review and authorize the filing of pleadings, confer amongst themselves, and attend proceedings, depositions, settlement negotiations and hearings

as needed. Id. at 9.  Accordingly, this factor weighs in favor
of the grouping.

Next, courts consider the sophistication factor to weigh in
favor of grouping when the group is comprised of institutional
investors with significant assets under management and "track
records of successfully serving in lead plaintiff groups under
the PSLRA."  Cohen v. Luckin Coffee Inc., No. 1:20-CV-01293-LJL,
2020 WL 3127808, at *5 (S.D.N.Y. June 12, 2020).  All members of
the Northeast Pension Funds group are institutional investors
that manage significant assets.  (Dkt. #17-3 at 3-4) (asserting
that New England Teamsters manages more than $2.4 billion,
Laborers Local 60 manages $300,000,000, and Roofers Local 8
manages more than $250,000,000).  Additionally, each member has
served as a lead plaintiff or co-lead plaintiff under the PSLRA
and recovered millions of dollars for the classes they
represented.  (Dkt. #17-3 at 4-5).  Accordingly, this factor
weighs in favor of the grouping.

Lastly, courts consider whether group members chose outside
counsel, rather than vice versa.  Even if group members may
"have had the litigation opportunity identified for them by
counsel rather than having independently identified the
litigation themselves and then chosen counsel," where the group
"has had prior, extensive experience prosecuting class action

securities suits alongside its proposed class counsel" this factor weighs in favor of grouping.  <u>Luckin Coffee Inc.</u>, 2020 WL 3127808 at *5.  As courts have found, this prior experience will bring benefits such as "trust, effective communication, and cost-effectiveness."  <u>Id.</u>  Here, the Northeast Pension Funds group has not indicated whether its members identified the litigation, or whether the opportunity was identified to them by counsel.  However, in its Joint Declaration, the group notes that its members have overseen both law firms proposed as lead counsel in prior securities class actions pursuant to the PSLRA. (Dkt. #17-3 at 8).  Accordingly, this factor is at least neutral, but may very well weigh in favor of the grouping.

Together, these factors satisfy the Court that the Northeast Pension Funds are sufficiently involved in the litigation to exercise control over their counsel, rather than vice versa.  While the members do not have a pre-litigation relationship, they are a relatively small group of sophisticated institutional investors with experience litigating securities class actions alongside the counsel that has represented them in the case thus far.  *See also* <u>Brady v. Top Ships Inc.</u>, 324 F. Supp. 3d 335, 347 (E.D.N.Y. 2018) (noting that a lead plaintiff group of three members is a "size that courts have generally found likely to be cohesive").  Two members of the group have successfully served as co-lead plaintiffs in other lead

plaintiff groups under the PSLRA, and the members have not been cobbled together for the purpose of manufacturing the largest financial interest in the litigation.  (Dkt. #17-3 at 4-5). Accordingly, the Court finds that allowing the Northeast Pension Funds to proceed as a group is in the best interests of the class and aligns with the objectives and preferences of the PSLRA.

> D. *The Northeast Pension Funds are the presumptive lead plaintiff.*

>> i. *The Northeast Pension Funds have the largest financial interest in the litigation.*

The Court must first determine which of the movants has the largest financial interest in the litigation.  As the Honorable Vanessa L. Bryant has observed, to determine which party has the largest financial interest, a court may consider: "(1) [t]he number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." Labul v. XPO Logistics, Inc., No. 3:18-CV-2062 (VLB), 2019 WL 1450271, at *4 (D. Conn. Apr. 2, 2019) (citations omitted).  Some courts within the Second Circuit have held that the fourth factor should be afforded special weight. Murphy v. Argo Blockchain PLC, 2023 WL 4629444, at *3 (E.D.N.Y. July 19, 2023)("The fourth factor, the approximate losses

suffered, is considered to be the most important."); Lavin v. Virgin Galactic Holdings, Inc., 2021 WL 5409798, at *5 (E.D.N.Y. Sept. 17, 2021).  *See also* Lee Goodman Tr. v. Wheels Up Experience Inc., No. 23CIV2900OEMVMS, 2023 WL 8631014, at *2 (E.D.N.Y. Dec. 12, 2023)("Because of the importance placed on the fourth factor, a movant who suffered the greatest loss by a substantial percentage is likely to have the largest financial interest, even if the other three factors favor another movant."); Richman v. Goldman Sachs Grp., Inc., 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.").

Mr. Chow argues that he has a larger financial interest than the "only remaining movant from the Group," Roofers Local 8. (Dkt. #34 at 20).  However, since the Court has determined that the Northeast Pension Funds may proceed as a group, this argument is unavailing.  As a group, the Northeast Pension Funds have a larger number of total shares purchased, net shares purchased, net funds expended, and claimed loss.  (Dkt. #33 at

10).[8]  Accordingly, the Northeast Pension Funds have demonstrated

that they have the largest financial interest in the litigation.

*See* Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY

Pension Fund v. New Oriental Educ. & Tech. Grp. Inc., No. 22-CV-

1014, 2022 WL 1515451, at *3 (S.D.N.Y. May 13, 2022) (finding

that ACATIS had the largest financial interest where three of

the four factors weighed in favor of such a finding).

> ii.  *The Northeast Pension Funds have made a* prima
> facie *showing of adequacy and typicality under
> FRCP 23.*

At the lead plaintiff stage, "a lead plaintiff movant need

only make a preliminary showing that it satisfies the typicality

and adequacy requirements of Rule 23."  In re Tronox, Inc., 262

F.R.D. 338, 344 (S.D.N.Y. 2009).  The Northeast Pension Funds

have made this prima facie showing.

For typicality, the *prima facie* showing is satisfied where

a proposed lead plaintiff's claims "arise[] from the same course

of events," and the proposed lead plaintiff will "make[] similar

---

[8] The only factor by which Mr. Chow leads all individual members of the
Northeast Pension Funds is in total shares purchased.  Mr. Chow purchased
22,420 shares, while Laborers Local 60 purchased 20,806, New England
Teamsters purchased 19,207, and Roofers Local 8 purchased 4,545.  (Dkt. #33
at 10).  Even though he purchased a larger number of shares than the
*individual* members, the Northeast Pension Funds *combined* have more total
shares purchased.  Id.  Mr. Chow has 22,420 total shares purchased while the
Northeast Pension Funds have 44,558.  Additionally, total shares purchased is
the "least important" factor.  Cortina, 2016 WL 1337305, a *1.  By the other,
more important factors, Mr. Chow's interest comes third behind the New
England Teamsters and Laborers Local 60.  Id.

legal arguments to prove the defendant's liability." Janbay v. Canadian Solar, Inc., 272 F.R.D. 112, 120 (S.D.N.Y. 2010). Here, the Northeast Pension Funds' claims are typical of those shared by the class.  Courts within the Second Circuit have held that the typicality requirement is "not demanding," and can be satisfied by a showing that a putative lead plaintiff's claims arise from the defendant's misstatements and omissions which damaged other members of the class. *See* Shapiro, 2022 WL 16555585 at *3 (quoting In re Prestige Brands Holdings, Inc., No. 05 Civ. 6924 (CLB), 2007 WL 2585088, *2-3 (S.D.N.Y. 2007)). The group's claims arise from the same course of events as those of the rest of the class, and they will make similar legal arguments to prove defendants' liability.  The Northeast Pension Funds allege that the Funds, as well as all class members, purchased RTX securities in reliance on the defendants' alleged misstatements and omissions and were damaged thereby.  (Dkt. #16 at 11).  Therefore, the typicality showing has been satisfied.

For adequacy, the *prima facie* showing is satisfied if "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." Teva, 302 F. Supp. 3d at 505 (quoting Khunt v. Alibaba Grp. Holding Ltd., 102 F. Supp. 3d 523, 536 (S.D.N.Y.

2015)).  Relevant to this inquiry, Mr. Chow argues that the
Teamsters' representative, Mr. Greene, has a history of failing
to supervise lawyers in his capacity as Chairperson and member
of the Board of Trustees of the Boston Retirement System
("BRS"). (Dkt. #34 at 6).  BRS served as lead plaintiff in a
securities class action captioned In re Allergan PLC Sec.
Litig., No. 18 Civ. 12089 (S.D.N.Y.), in which the court
determined that BRS had failed to oversee and monitor counsel.
In response, the Northeast Pension Funds argue that Mr. Greene
was not responsible for the oversight of counsel in the Allergan
action.  (Dkt. #41 at 12).  The Northeast Pension Funds note
that BRS's Board does not oversee litigation and that BRS has
been appointed lead plaintiff on several occasions following the
Allergan action.  Id. at 12-13.  The Northeast Pension Funds
also note a decision by the Honorable Jed S. Rakoff where a lead
plaintiff movant made Judge Rakoff aware of the Allergan
litigation in asserting that BRS should not be appointed lead
plaintiff.  See Shapiro, 2022 WL 16555585 at *6 n.2.

   In Shapiro, Judge Rakoff appointed BRS as lead plaintiff
notwithstanding another lead plaintiff movant's objection,
noting that the law firms in Allergan were not involved in the
litigation before Judge Rakoff and that the representative of
BRS in that action had not been the representative of BRS during
the Allergan litigation.  Id. at *6 n.2.  Notably, Judge Rakoff

appointed BRS as lead plaintiff over objection, even where BRS
itself was the party reprimanded by the court in <u>Allergan</u>.

   In the instant case, BRS is not a party moving for appointment
as lead plaintiff.  None of the members of the Northeast Pension
Funds group, or their representatives, were involved in the
<u>Allergan</u> litigation.  Accordingly, Mr. Greene's involvement in
this litigation as the New England Teamsters' party
representative will not expose the Northeast Pension Funds group
to a unique defense that a group member is inadequate on this
basis.  The group has otherwise made a *prima facie* showing of
adequacy.  Based on counsel's resume, the group's chosen class
counsel is experienced in class action securities litigation,
qualified, and able to conduct the litigation.  (Dkt. #17-6)
(Labaton Keller Sucharow LLP credentials) (Dkt. #17-7) (Saxena
White P.A. credentials).  There is no evidence that the group
members' interests are antagonistic to one another or other
class members.  Additionally, the group's significant financial
interest in the litigation ensures that they will vigorously
advocate on behalf of the class.

>    *E. Mr. Chow has failed to rebut the Northeast Pension
>       Funds' presumption as lead plaintiff by arguing that
>       Laborer's Local 60 is subject to unique defenses.*

   Mr. Chow argues that Laborer's Local 60 is subject to a unique
defense because it purchased a "disproportionate number of

shares after the July 25, 2023 revelations," giving rise to the
inference that Laborer's Local 60 did not rely on the alleged
misrepresentations of the defendants or the integrity of the
market price in making its post-July 25, 2023 purchases.  (Dkt.
#34 at 19).  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)
(presumption of adequacy may be rebutted "upon proof...that the
presumptively most adequate plaintiff...is subject to unique
defenses that render such plaintiff incapable of adequately
representing the class.").  The July 2023 revelations refer to
the disclosure by RTX of quality control issues and that many of
its engines would have to be inspected.  This news caused the
share price to fall 10.2%.  Subsequently, on September 11, 2023,
RTX more fully revealed its liability, including that the
company would lose approximately $3.5 billion in profits.  On
this news, the share price fell another 7.9%.  (Dkt. #16 at 8).

   In In re Petrobras Sec. Litig, 104 F. Supp. 3d 618, 623
(S.D.N.Y. 2015), the Honorable Jed S. Rakoff found that a
proposed lead plaintiff group would be subject to unique
defenses because two of its three members purchased shares only
after partial disclosures were made.  One of the member's funds
made significant purchases following the class period, and
published statements that its decision to purchase was not based
on the market's valuation of the stock at the time of the
purchase.  Id.  Judge Rakoff found that those statements

provided "fodder for defendants to argue that [the fund] relied

on its own valuation" of the defendant's securities, and not on

their market price.  Id.  In the instant case, there is an

absence of such evidence showing that the Northeast Pension

Funds did not rely on the market in its valuation of RTX

securities.

In other circumstances, courts have found that post-

disclosure purchases do not render class representatives

atypical for the purposes of class certification.  For example,

in Bos. Ret. Sys. v. Alexion Pharms., Inc., No. 3:16-CV-2127

(AWT), 2023 WL 2932485 (D. Conn. Apr. 13, 2023), the plaintiffs

at issue made purchases following partial disclosures, during

which time the full scope of the defendant's alleged misconduct

had not yet been revealed.  Id. at *4.  The Honorable Alvin W.

Thompson found that the plaintiff's purchase of "additional

shares in reliance on the integrity of the market after the

disclosure of corrective information has no bearing on whether

or not [it] relied on the integrity of the market during the

class period." Id. at *5 (quoting City of Livonia Employees'

Ret. Sys. v. Wyeth, 284 F.R.D. 173, 178 (S.D.N.Y. 2012))

(internal citation omitted).

The Court notes that the plaintiff at issue in Alexion made

just over fourteen percent of its purchases after the partial

disclosure.  Here, Mr. Chow argues that Laborers Local 60's purchase of forty-one percent of its shares following RTX's partial disclosure is disqualifying.  However, courts have found that even higher percentages of post-disclosure purchases are not *per se* disqualifying.  *See* Arkansas Tchr. Ret. Sys. v. Insulet Corp., 177 F. Supp. 3d 618, 625 (D. Mass. 2016) (finding that proposed lead plaintiff group was not subject to a unique defense where group purchased approximately sixty percent of its combined shares after defendant's initial disclosure); Goldenberg v. NeoGenomics, Inc., No. 22 CIV. 10314 (JHR), 2023 WL 6389101 (S.D.N.Y. Oct. 2, 2023) (finding presumptive lead plaintiff who purchased all of his shares after first partial disclosure, but before second and third disclosures, was not susceptible to a unique defense).

Here, the evidence that Laborers Local 60 purchased approximately forty-one percent of its shares after the partial disclosure does not rebut the presumption that Local Laborers 60 relied on the integrity of the market in purchasing RTX securities.  Mr. Chow offers no other evidence showing that Laborers Local 60 did not rely on the market to absorb the information from the July 2023 disclosure such that it believed that the shares it purchased after the July 2023 disclosure reflected the true share price.

>    *F. The Northeast Pension Funds' choice of lead counsel is
>    approved.*

According to the PSLRA, the most adequate plaintiff shall
select and retain counsel to represent the class. 15 U.S.C. §
78u-4(a)(3)(B)(v).  This selection is subject to the approval of
the court, but there "is a strong presumption in favor of
approving a properly-selected lead plaintiff's decision as to
counsel." Teva, 302 F. Supp. 3d at 506; Atanasio v. Tenaris
S.A., 331 F.R.D. 21, 31 (E.D.N.Y. April 29, 2019) ("The Court
generally defers to the plaintiff's choice of counsel, and will
only reject the plaintiff's choice...if necessary to protect the
interests of the class.").  Mr. Chow argues that there is no
showing that there is a need for a two co-lead law firm
structure in this action.  (Dkt. #34 at 6).  Mr. Chow argues
that this structure will result in unnecessary expenses,
duplication, and extra attorney's fees which will result in a
smaller recovery for members of the class.  Id.  In response,
the group notes that fees in the case will be based on a
percentage of the recovery achieved and subject to court
approval, and that courts within the Second Circuit frequently
appoint co-lead counsel. *See* dkt. #41 at 10-11 (citing Omdahl
v. Farfetch Ltd., 2020 WL 3072291, at *3 (S.D.N.Y. June 10,
2020); Lavin v. Virgin Galactic Holdings, Inc., 2021 WL 5409798,
at *8 (E.D.N.Y. Sept 17, 2021)).  The group's Joint Resolution

also asserts that the group has instructed the two proposed co-lead law firms to enter into a Joint Prosecution Agreement and have instructed them to keep contemporaneous time records to ensure no duplication of effort.  (Dkt. #17-3 at 9).  Accordingly, the Court approves the Northeast Pension Funds group's choice of co-lead counsel.[9]

**IV.  Conclusion**

For the foregoing reasons, the Northeast Pension Funds group is appointed as lead plaintiff and its choice of Saxena White, P.A. and Labaton Keller Sucharow LLP as lead counsel is approved.

This is not a Recommended Ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous"

---

[9] The Northeast Pension Funds' motion also requests that the Court approve its selection of Silver Golub & Teitell LLP as "Additional Counsel for the Class."  (Dkt. #15 at 3).  Although listed in the group's submissions as either "Additional Counsel for the New England Teamsters Pension Fund and Proposed Additional Counsel for the Class" or as "Additional Counsel for the New England Teamsters Pension Fund and Proposed Liaison Counsel for the Class," (dkt. #15 at 3; dkt. #33 at 14), the Northeast Pension Funds group materials provide no law firm resume or other information regarding the qualifications of Silver Golub & Teitell LLP.  Additionally, the group's materials provide no explanation for this firm's proposed involvement in the prosecution of the litigation, and while members of the firm were present, the firm's involvement was not discussed during the oral argument held on April 11, 2024.  (Dkt. #58).  Accordingly, based on the current record, Silver Golub & Teitell LLP is not approved as "co-lead counsel" or "additional counsel" for the class.  *See e.g.* Cushman v. Fortress Biotech, Inc., No. 20-CV-5767 (KAM), 2021 WL 7449182, at *7 n.6 (E.D.N.Y. Mar. 24, 2021), aff'd, No. 20-CV-5767(KAM)(RLM), 2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021).  *See also* Pearlstein v. Blackberry Ltd., No. 213CV07060CMKHP, 2019 WL 8953067 (S.D.N.Y. Oct. 18, 2019) (noting that a "sensible reading and understanding of the PSLRA" likely does not allow for "Lead Plaintiffs to evade [the court's] review" of class counsel's credentials "by designating [them] as 'non-lead counsel'").

statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. R. 72.2.  As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 2nd day of May, 2024 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge